IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RICARDO VÉLEZ AMADOR<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES COAST GUARD, et al.<br><br>Defendants | Civil No. 20-1724 (GLS) |

**OPINION AND ORDER**

This is an action to review a decision made by the United States Coast Guard ("USCG") assessing a $1,000 penalty against Ricardo Vélez-Amador ("Vélez-Amador") for the negligent operation of a vessel under 46 U.S.C. § 2302(a). Pending before the Court is the USGC's motion for summary judgment and Vélez-Amador's cross motion for summary judgment. Docket Nos. 20 and 25. Because the USCG's determinations were based on substantial evidence in the record, the USCG's motion for summary judgment at Docket No. 20 is **GRANTED** and Vélez-Amador's cross-motion for summary judgment is **DENIED**.

**I.   Uncontested Facts**

Having reviewed the submissions by both sides and the documentary evidence in the record, the Court finds that the following facts are not in dispute, including those that establish this Court's jurisdiction to adjudicate this matter.

1.  On July 25, 2017, the ANDREA GABRIELA, with 11 passengers on board, departed a boathouse in Lajas, Puerto Rico and sailed in the direction of the Bioluminescent Bay at La Parguera in Lajas. Docket No. 1 at ¶ 11; Defendants' Statement of Uncontested Facts ("DSUF") No. 5; Plaintiff's Statement of Uncontested Facts ("PSUF") No. 2.

2.  The captain of the ANDREA GABRIELA was Ricardo Vélez Amador. Docket No. 1 at ¶ 12.

1

3. The night was dark and there was no moon. Docket No. 1 at ¶ 13; DSUF No. 6; PSUF No. 8.

4. The ANDREA GABRIELA was running at a speed of approximately 10-11 knots per hour. Docket No. 1 at ¶ 15.

5. Vélez-Amador was aware of other traffic in the area, including that boats turn off their navigational lights in the Bioluminescent Bay to better observe the bioluminescence. DSUF No. 6; PSUF No. 25.

6. The ANDREA GABRIELLA collided against another vessel, the M/V LA NENA II. Docket No. 1 at ¶¶ 16-17.

7. The incident and collision between LA NENA II and the ANDREA GABRIELA occurred suddenly and unexpectedly. PSUF No. 26.

8. The USCG issued a Notice of Violation to Vélez-Amador on December 4, 2017. Docket No. 26-3.

9. On March 6, 2018, the USCG Hearing Officer notified Vélez-Amador a Preliminary Assessment Letter. Docket No. 26-3.

10. On May 8, 2018, the USCG Hearing Officer notified Vélez-Amador a Final Assessment Letter, assessing a civil penalty of $1,000. Docket No. 21-21.

11. Vélez-Amador requested a hearing, which was scheduled to be held on December 6, 2018. Vélez-Amador was notified of the hearing through counsel. Docket No. 21-11.

12. On December 18, 2018, the USCG Hearing Officer reopened the case, set aside the Final Assessment Letter and made a final determination on the matter. The USCG Hearing Officer concluded that on the date at issue Vélez-Amador was traveling too fast for the prevailing circumstances, did not maintain a proper look out, and failed to properly assess the risk of collision in violation of Rules 5, 6, and 7 of the International Regulations for Preventing Collisions at Sea ("COLREGS"). The USCG Hearing Officer found the charge proved and assessed a $1,000 civil penalty. Docket No. 21-11.

13. Requests to reopen by Vélez-Amador were denied on February 5, 2019, and on March 19, 2019. Docket Nos. 25-12, 25-13.

14. On November 16, 2020, the USCG Commandant affirmed the decision of the Hearing Officer, including the imposition of the $1,000 civil penalty. Docket No. 21-1.

## II.     Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is warranted when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). However, "in cases involving review of agency action under the APA, the traditional Rule 56 standard does not apply due to the limited role of a court in reviewing the administrative record." Bennett v. Murphy, 166 F.Supp.3d 128, 139 (D.Mass. 2016). "The function of the district court on motion for summary judgment in a case involving judicial review of final agency action under the Administrative Procedure Act is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." 10A CHARLES A. RIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2725 (4th ed. 2022).

A court may only set aside an administrative action if it was arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence. 5 U.S.C. § 706(2) (A)-(E). The United States Supreme Court has described the "APA court/agency substantial evidence standard as requiring a court to ask whether a reasonable mind might accept a particular evidentiary record as adequate to support a conclusion. Dickinson v. Zurko, 527 U.S. 150, 162 (1999) (quotations and citations omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Green Mountain Realty Corp. v. Leonard, 688 F.3d 40, 50 (1st Cir. 2012) (quoting Sw. Bell Mobile Sys., Inc. v. Todd, 244 F.3d 51, 58 (1st Cir. 2001)). When there are two possible conclusions that can be drawn from the evidence, the reviewing court must defer to the administrative agency. Id.

## III.    Discussion

The Hearing Officer held that Vélez-Amador was liable for the negligent operation of the vessel ANDREA GABRIELA pursuant to 46 U.S.C. § 2302(a). Section 2302(a) of title 46 establishes that "[a] person operating a vessel in a negligent manner or interfering with the safe operation of a vessel, so as to endanger the life, limb, or property of a person is liable to the United States Government for a civil penalty of not more than $5,000 in the case of a recreational vessel, or $25,000 in the case of any other vessel." 46 U.S.C. § 2302(a). The Hearing Officer determined that Vélez-Amador violated Rules 5, 6, and 7 of COLREGS. COLREGS is "a code of international rules of the road for maritime traffic throughout the world." Juno SRL v. S/V Endeavour, 58 F.3d 1, 4 (1st Cir. 1995). The Hearing Officer assessed a penalty of $1,000. See 33 C.F.R. § 1.07–65.

On appeal, the USGC Commandant determined that the Hearing Officer's decision was supported by substantial evidence and was not arbitrary or capricious. Docket No. 1-3 at 5.

Vélez-Amador seeks judicial review and argues that the Hearing Officer's decision was not based on substantial evidence in the record and was arbitrary and capricious. Docket No. 25 at 10. Vélez-Amador's challenges to the USCG's decision are anchored on the following: (1) Vélez-Amador was not granted a hearing, (2) there was insufficient evidence to conclude that the LA NENA II had its navigation lights on, (3) there was insufficient evidence to conclude that Vélez-Amador failed to maintain a proper lookout, and (4) there was insufficient evidence to conclude that the ANDREA GABRIELA was traveling at an unsafe speed. Having examined the entire record before the Court, the Court is convinced that no such errors occurred. The decision of the USCG Hearing Officer and on appeal is premised on substantial evidence in the record and there is no need to disturb the imposition of the $1,000 penalty against Vélez-Amador.

**1. Vélez-Amador was afforded a hearing.**

Vélez-Amador argues that his due process rights were violated when he was denied a hearing. Docket No. 25 at 4-5. However, Vélez-Amador waived his right to a hearing. On March 6, 2018, the Hearing Officer notified Vélez-Amador the Preliminary Assessment Letter, in which he informed that Vélez-Amador was subject to a $1,000 civil penalty and that a final decision would be made after Vélez-Amador had an opportunity to respond. Docket No. 21-20. Vélez-Amador was informed that he could submit evidence in lieu of a hearing or request a hearing in writing. Id. The letter expressly stated that failure to request a hearing within 30 days would result in a waiver of his right to a hearing. Id. On May 8, 2018, the Hearing Officer notified Vélez-Amador his Final Assessment Letter, noting that he had failed to respond to the Preliminary Assessment Letter. Docket No. 21-21. It was not until May 22, 2018 (more than two months after the Preliminary Assessment Letter) that Vélez-Amador requested a hearing for the first time. Docket No. 21-11. On December 6, 2018, the Hearing Officer convened a hearing at the request of Vélez-Amador's attorney. Neither Vélez-Amador nor his attorney appeared at the hearing. The Hearing Officer did not reschedule a new hearing but informed Vélez-Amador that he could submit new evidence by December 17, 2018. See 33 C.F.R. § 1.07-25. The Hearing Officer considered the evidence submitted by Vélez-Amador and made his final decision on December 18, 2018. Docket No. 21-11. Thereafter, the Hearing Officer denied Vélez-Amador's request to reopen the matter by stating that "after thoroughly reviewing the information you provided, I find no reason

4

to conduct yet another hearing because you have not provided any new evidence or raised any issues that would convince me to change my decision dated December 17, 2018." Docket No. 25-12. On appeal before the Commandant of the USCG, Vélez-Amador did not raise the due process argument now before the Court. Docket No. 21-1.

Vélez-Amador was afforded an opportunity for a hearing and failed to appear. He was also afforded an opportunity to present additional evidence, which was considered and rejected by the Hearing Officer. 33 C.F.R. § 1.07-25(a) (allows a party to present written evidence and arguments in lieu of a hearing). No more was required. Vélez-Amador waived his right to a hearing when he failed to appear. 33 C.F.R. § 1.07-25(b) (right to a hearing waived if not requested on time; hearing officer has discretion to allow late requests); see e.g., Glenwood W. v. Kijakazi, 2021 WL 5236492 at 3 (D.Me.) (when plaintiff failed to appear at hearing, he constructively waived his right to a hearing); Agron-Bonilla v. Comm'r of Soc. Sec., 2009 WL 4670538 at 4 (D.P.R.); Williams v. Kijakazi, 2022 WL 1123819 at 7 (E.D. La.). He also waived this argument when he failed to raise it on appeal before the Commandant of the USCG. Williams v. United States Department of Transportation, et al., 781 F.2d 1573, 1578 (11th Cir. 1986); Camp v. Pitts, 411 U.S. 138, 142 (1973) ("focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").

**2. There is substantial evidence to conclude that the LA NENA II's navigation lights were on.**

In his opposition to the USCG's motion for summary judgment, Vélez-Amador argues that the Hearing Officer's findings that the LA NENA II had its navigation lights on, and that Vélez-Amador had limited visibility are not based on the evidence. He references his own testimony and the Hearing Officer's Preliminary Assessment Letter. Docket No. 25-1 ¶¶ 14-15. However, in his decision, the Hearing Officer cited to testimonial accounts regarding the navigational lights and gave credibility to at least four passengers on the LA NENA II who attested that just prior to the collision the LA NENA II had its lights on. Docket No. 21-11; see Docket No. 21-3 (Christian Marrero López "could see the white light on top of the canopy illuminated."); Docket No. 21-10 (Julie McCann observed that "she saw that the white light was still illuminated"); Docket No. 21-12 (Angie Argyro-Ortega observed the vessel's [LA NENA II] front lights energized prior to getting underway and stated that "[t]he captain switched off the lights, but it wasn't completely dark, there were still some lights on"); Docket No 21-4 (Jasmine McCann stated remembering

seeing "tiny lights on the front and back of the boat [LA NENA II]"); Docket No. 21-9 (Captain Jose Luis Hernández-Zapata "[a]fter the safety brief, the Captain turned off the interior canopy lights, leaving the running exterior lights illuminated and got underway […]"); Docket No. 33-1 (Cheryl LeDuc "seeing the reflection of the white light from the top of the boat in the water"). There was substantial evidence in the record to conclude that the LA NENA II's navigational lights were on at the time of the collision. The fact that there could be conflicting testimony is insufficient to disturb the finding of the Hearing Officer. See Green v. United States Coast Guard, 642 F.Supp. 638, 642 (N.D.Ill. 1986).

### 3. Rule 5

Vélez-Amador argues that the use of a radar is not mandatory and that the Hearing Officer erred in determining that he was in violation of Rule 5 for failing to use radar as a means of maintaining a proper look-out and assessing the risk of a collision. Vélez-Amador argues that the Hearing Officer did not consider the LA NENA II's own negligence (no navigational lights and a poor target for radar detection) or the fact that it was a dark and moonless night which prevented him from seeing the LA NENA II. He further argues that whether the use of a radar would have enabled him to avoid the accident is speculative.

Rule 5 of COLREGS establishes that "[e]very vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision." 33 C.F.R. § 83.05 (a). Contrary to the arguments made by Vélez-Amador, the USCG Hearing Officer did not find that the use of a radar was mandatory under the rule. Instead, the Hearing Officer held that, given the circumstances and conditions of the night of the collision, Vélez-Amador's failure to use the radar resulted in the violation of Rule 5. Indeed, Vélez-Amador's own expert witness expressed that "radar is not mentioned directly, but inferred as another available means" of maintaining a proper lookout. Docket No. 25-4 at 4. Further, the language of Rule 7 of COLREGS also establishes that every "vessel shall use all available means appropriate to the prevailing circumstances and conditions to determine if risk of collision exists." 33 C.F.R. § 83.07(a). And according to Rule 7(b) "[p]roper use shall be made of radar equipment if fitted and operational, including long-range scanning to obtain early warning of risk of collision and radar plotting or equivalent systematic observation of detected objects.". 33 C.F.R. § 83.07(b).

The Hearing Officer considered the prevailing circumstances, such as the fact that it was dark and moonless and that Vélez-Amador knew vessels turned off their navigation lights in the area, in finding a violation to Rule 5. Docket Nos. 21-11; 25-2. The Hearing Officer concluded that:

> [T]he preponderance of the evidence clearly shows your vessel was traveling at a high rate of speed and was 'bow up' at the time of the collision. This would prevent you from being able to see, even if for only 30 seconds or less. It was dark and you knew other vessels in the area would turn off their navigation lights to see the bioulucence. Therefore, even if the LA NENA II turned off some or all of its navigation lights, you were still traveling too fast for the prevailing circumstances and not maintaining a proper look out. Docket No. 21-11.

In support thereof, the Hearing Officer considered that witnesses onboard the ANDREA GABRIELA and on the LA NENA II stated that the night was very dark. Docket No. 25-6; Docket No. 25-7. That several passengers on the LA NENA II saw the ANDREA GABRIELA shortly before it collided and confirmed that the ANDREA GABRIELA was riding on a high plane. And that the ANDREA GABRIELA was traveling without lights at a fast speed and went airborne, collapsing the wooden roof of the LA NENA II vessel. Docket Nos. 21-3; 21-4; 21-5; 21-6. Given these accounts and the fact that Vélez-Amador knew vessels turned off their navigation lights in the area, the Hearing Officer properly concluded that the "prevailing circumstances" required Vélez-Amador to use the radar to maintain a proper lookout. He did not. And failure to do so constituted a violation to Rule 5. See Trinidad Corp. v. S.S. Keiyoh Maru, 845 F.2d 826 (9th Cir. 1988) (failure to post a lookout and effectively use radar a violation of Rule 5); Capt'n Mark v. Sea Fever Corp., 692 F.2d 163, 166 (1st Cir. 1982) ("The adequacy of the lookout must be evaluated realistically in light of all the circumstances."); Complaint of G & G Shipping Co., Ltd. of Anguilla, 767 F.Supp. 398, 406 (D.P.R. 1991) (citation omitted) ("An inefficient lookout is equivalent to none.").

The LA NENA II's alleged negligence does not negate the fact that Vélez-Amador was in violation of Rule 5 for failing to maintain a proper lookout and assess the risk of collision. The U.S. Supreme Court has established that "[t]he duty of the lookout is of the highest importance. Upon nothing else does the safety of those concerned so much depend […][E]very doubt as to the performance of the duty, and the effect of non-performance, should be resolved against the vessel

7

sought to be inculpated until she vindicates herself by testimony conclusive to the contrary." See Complaint of G & G Shipping Co., Ltd. of Anguilla, 767 F. Supp. at 406 (quoting The Ariadne, 80 U.S. 475, 475 (1871). The prevailing circumstances in this case made the use of a radar important as a means of maintaining a proper lookout and preventing a collision. The Hearing Officer's conclusion that Vélez-Amador was traveling with an inefficient lookout is supported by substantial evidence of the prevailing circumstances on the night of the collision at issue.

Vélez-Amador's argument that there is no way to determine that he could have avoided the collision had he had a radar lacks merit because causation is not required to prove his negligence. The United States Supreme Court has established a rule of negligence *per se* for violations of navigational regulations. The Pennsylvania, 86 U.S. 125, 136 (1873); Havinga v. Crowley Towing & Transp. Co., 24 F.3d 1480, 1490 n. 2 (1st Cir. 1994) ([…] a vessel shown to be in actual violation of a collision-prevention rule bears the burden of proving that her fault could not have been a contributing cause of the accident."). The burden of proof shifted to Vélez-Amador for violating Rule 5. No causal connection between the failure to use the radar and the collision was necessary to find a violation to Rule 5.

### 4. Rule 7

Vélez-Amador argues that the Hearing Officer applied Rule 7 arbitrarily in stating that only radar-plotting or computer aided collision avoidance satisfies the rule. He further argues that nothing in Rule 5 or Rule 7 establishes that the use of the radar is mandatory when the radar is not operational. He further argues that there is no evidence that the ANDREA GABRIELA had an operational radar and that his use of the Navionics App demonstrates that he did not have functional radar. And that the Hearing Officer did not consider the totality of the circumstances (i.e., the LA NENA II traveling with no lights and the night was dark) prior to finding a violation to Rule 7.

Rule 7 of COLREG establishes that vessels shall use the appropriate means to determine if a risk of collision exists. 33 C.F.R. § 83.07(a). Furthermore, "[p]roper use shall be made of radar equipment if fitted and operational, including long-range scanning to obtain early warning of risk of collision and radar plotting or equivalent systematic observation of detected objects." 33 C.F.R. § 83.07(b). The Hearing Officer denied Vélez-Amador's request to reopen and held that Vélez-Amador "had an operational radar on his vessel, yet he chose not to use it under those dangerous circumstances." Docket No. 25-12. Despite various filings before the Hearing Officer, Vélez-

Amador did not submit evidence that the ANDREA GABRIELA did not have operational radar. Indeed, on appeal before the Commandant of the USCG the argument was deemed waived. Docket No. 21-1 (that the ANDREA GABRIELA had a radar not in dispute). Vélez-Amador's argument—that the ANDREA GABRIELA did not have an operational radar—brought for the first time on appeal before the Commandant of the USCG was thus waived. Williams v. United States Department of Transportation, et al., 781 F.2d at 1578; Camp v. Pitts, 411 U.S. at 142.

In any event, Vélez-Amador cites to the Preliminary Assessment Letter to substantiate his claim that he did not have an operational radar on board. Docket No. 26 at 10. But the Enforcement Summary attached to the Preliminary Assessment Letter contradicts his claim; it specifically states that there was a "failure to use radar equipment on board". Docket No. 25-3 at 1. And while Vélez-Amador's expert witness opined that Vélez-Amador did not have an obligation to use the radar, he did not dispute that the ANDREA GABRIELA was equipped with radar and in his description of the vessel included reference to a "[r]adar". Docket No. 25-4 at 5. Finally, admittedly, Vélez-Amador's use of the Navionics App on his cell phone was to follow the tracks of the trip he had made two days prior and to serve as a radar. Docket No. 25-2 (could see his vessel's position on the track line but could not see any other boats when following the previously recorded track). There is substantial evidence that under the circumstances—dark and moonless night, knowledge that boats in the area could have their lights off— Vélez-Amador failed to comply with COLREGS by not using his radar to avoid a collision. See Complaint of G & G Shipping Co., Ltd. of Anguilla, 767 F.Supp. at 407, 412 (not keeping a constant and vigilant lookout and not using radar to avoid a collision is a violation of Rule 7(b)).

**5. There is substantial evidence that the ANDREA GABRIELA was travelling at an unsafe speed.**

Vélez-Amador argues that the Hearing Officer's conclusion that the ANDREA GABRIELA was traveling at an unsafe speed was speculative because there was no evidence that the vessel was traveling at a speed of 11 knots. He also argues that the Hearing Officer did not make a determination as to what would have been a safe speed that night.

Rule 6 of COLREG provides that "[e]very vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions." 33 C.F.R. § 83.06. The following factors are considered to establish safe speed: (1) visibility, (2) the density of traffic in the area,

(3) how maneuverable is the vessel, (4) the presence of background lights during the evening, (5) the weather conditions, and (6) the draft in relation to the available depth of water. 33 C.F.R. § 83.06(a),; Moran Towing Corp. v. Girasol Martima SA, Inc., 195 F.Supp.2d 337, 347, n.83 (D.Mass. 2002).

The Hearing Officer concluded that Vélez-Amador was traveling at a speed of approximately 11 knots at the time of the collision and that such a speed was too fast for the prevailing circumstances. Docket No. 21-11. When Vélez-Amador was interviewed, he stated that "he struck LA NENA II going approximately 10-11 mph and never came down on speed because it was too fast and he had no chance". Docket No. 21-2 at 2. Furthermore, despite opining that it was slow speed, Vélez-Amador's expert witness also acknowledged that the ANDREA GABRIELA was traveling at a speed of 11 knots. Docket No. 25-4 at 3. Indeed, paragraph 15 of the Complaint alleges that the ANDREA GABRIELA was running at a speed of 10-11 knots per hour. There is thus no serious dispute as to the speed of the vessel that night.[1]

The Hearing Officer evaluated the prevailing circumstances at the time of the collision between the ANDREA GABRIELA and the LA NENA II and determined that the ANDREA GABRIELA was not traveling at a safe speed. Docket No. 21-1 at 3. The prevailing conditions considered by the Hearing Officer included that it was nighttime, there was no moon, vessels turned off their lights in the area, and Vélez-Amador knew that vessels turned off their lights to see the bioluminescence in the area. The evidence in the record also established that witnesses perceived that the ANDREA GABRIELA was traveling fast. Docket No. 21-14 (Gerardo Hernández stated that the ANDREA GABRIELA came very fast right before it collided with LA NENA II); Docket No. 21-4 (Jasmine McCann stated that the ANDREA GABRIELA was driving fast before it collided with LA NENA II); Docket No. 21-5 (Lourdes Rodríguez stated that the ANDREA GABRIELA was going really fast); Docket No. 21-6 (Ronald LeDuc stated the ANDREA GABRIELA was traveling at a high speed); Docket No. 21-7 (Samuel Chausse-Boileau stated that the ANDREA GABRIELA was going very fast). Based on the prevailing conditions and the testimony of witnesses that the ANDREA GABRIELA was travelling fast, the Hearing Officer concluded that Vélez-Amador was not traveling at a safe speed. Sterling Equip., Inc. v. M/T Great E., 52 F. Supp. 3d 76, 83 (D.Mass. 2014) ("The rule requires that vessels proceed at a

---

[1] Indeed, on appeal Vélez-Amador did not dispute that he was traveling at 11 knots. Docket No. 21-1 at 3.

sufficiently safe speed to avoid collisions, taking into account prevailing conditions and other factors."). The Hearing Officer's decision was thus based on substantial evidence and deserves deference. Puerto Rico Aqueduct & Sewer Auth. v. U.S. E.P.A., 35 F.3d 600, 604 (1st Cir. 1994) (an agency deserves an extra measure of deference with regard to factual questions involving scientific matters in its area of expertise); see e.g., Alexandre v. Machan, 147 U.S. 72, 84 (1893) (steamship grossly negligent for running at 11 knots an hour when it was foggy); Lyon v. Ranger III, 858 F.2d 22, 29 (1st Cir. 1988) (vessel in an area frequented by scuba divers should have travelled slower than 10 knots).

## IV. Conclusion

The USCG's finding that Vélez-Amador was is liable under 46 U.S.C. § 2302(a) is supported by substantial evidence in the record. Vélez-Amador has not asserted any arguments or submitted evidence to establish that the amount imposed in penalty was unreasonable. The penalty of $1,000 is one fifth of the maximum allowed by statute. 46 U.S.C. § 2302(a) (maximum penalty $5,000 for recreational vessels). There is no basis to conclude that it was unreasonable. See BP Exploration & Oil, Inc. v. U.S. Department of Transportation, 44 F.Supp.2d 34, 41 (D.D.C. 1999) (penalty of half amount allowed by statute reasonable). The USCG's motion for summary judgment is **GRANTED** and Vélez-Amador's cross motion for summary judgment is **DENIED**. The USCG's decision is **AFFIRMED**, and this case is **DISMISSED**.

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 28th day of March 2023.

s/Giselle López Soler
GISELLE LOPEZ SOLER
United States Magistrate Judge
